IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE CONTRERAS,<br><br>    Defendant. | Case No. CR11-0168<br><br>ORDER REGARDING<br>COMPETENCY |

TABLE OF CONTENTS

I.   INTRODUCTION .................................... 2

II.  PROCEDURAL HISTORY ............................. 2

III. RELEVANT FACTS .................................. 3
    A.   Underlying Events ............................ 3
    B.   Personal History ............................. 4
    C.   Evaluations .................................. 4
        1.   Luis Rosell ............................. 4
        2.   David M. Szyhowski ..................... 6
        3.   Kenya Randall Rocha ................... 8
    D.   Psychological Testing ........................ 9

IV.  DISCUSSION ....................................... 12
    A.   Is Defendant Able to Understand the Nature
        and Consequences of the Proceedings Against Him? ........ 13
    B.   Is Defendant Able to Assist Properly in His Defense? ......... 15
    C.   Summary ................................... 16

V.   ORDER ............................................ 17

## I. INTRODUCTION

On the 27th day of September 2012, this matter came on for hearing to determine Defendant's competency to stand trial. The hearing was concluded on October 3, 2012. The Government was represented by Assistant United States Attorney Richard M. Murphy. Defendant Jose Contreras appeared personally and was represented by his attorney, Jane Kelly.

## II. PROCEDURAL HISTORY

On December 8, 2011, Defendant Jose Contreras was charged by Indictment with two counts of transporting and harboring an alien. Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on February 21, 2012. Following a hearing, Defendant was released on conditions.

The trial was continued at Defendant's request. Prior to the rescheduled trial, Defendant's counsel filed a motion to determine Defendant's competency pursuant to 18 U.S.C. § 4241(a). Following a hearing, the motion was granted and Defendant was committed to the custody of the Attorney General for placement in a suitable facility for the purpose of conducting a psychiatric or psychological examination. Defendant was transported to MCC-Chicago for that purpose. Defendant arrived at the institution on May 6, 2012,[1] and the evaluation was completed on approximately June 20. In a report received on July 10, David M. Szyhowski, Psy.D., opined that Defendant is competent at this time.

A competency hearing scheduled for July 16, 2012, was continued to allow Defendant to be examined by an expert of his choosing. Defendant was subsequently evaluated by Kenya Randall Rocha, M.S., LMHC. The competency hearing was

---

[1] Dr. Szyhowski states in his report that Defendant arrived at MCC-Chicago on May 18, but the letter from Warden Catherine L. Lineweaver states he arrived on May 6. *Compare* docket numbers 29 and 34.

rescheduled for September 27 and, due to its length, was completed on October 3. Meanwhile, the trial was continued repeatedly and is currently scheduled for October 22.

## III. RELEVANT FACTS

### A. Underlying Events

These charges arise following a traffic stop in Vinton, Iowa, on November 22, 2011. Defendant was stopped for a taillight violation. It was discovered that his two passengers were in the United States illegally. The men were apparently returning to their motel after working on a roofing job. A DVD containing a video and audio recording of the stop was introduced as Government's Exhibit 4.

Immediately after the stop, a Vinton police officer approached Defendant, who was driving the vehicle, and spoke to him in English. After a brief discussion regarding the reason for the stop, the officer asked Defendant to move the vehicle away from a busy intersection, and Defendant complied. Later in the stop, Defendant was questioned by Special Agent Chris Cantrell of Homeland Security Investigations. Again, the questions were asked in English and Defendant responded in English. Defendant appeared to understand the questions and his answers were generally responsive. Furthermore, the digital recording does not show any substantial delay in Defendant responding to the questions.

The two passengers in Defendant's vehicle were arrested that evening. Defendant, who is a lawful permanent resident of the United States, was not arrested until December 19, 2011.[2] At that time, he was interviewed by Special Agents Karsten Anderson and Dave Hoagland. Defendant was *Mirandized* and questioned in both English and Spanish.[3] At the time of hearing, Anderson testified that Defendant's answers were "appropriate"

---

[2] An indictment charging Defendant with two counts of transporting and harboring an alien was returned on December 8, 2011, and a warrant was issued for his arrest.

[3] Special Agent Anderson testified that Special Agent Hoagland speaks Spanish, although he was not able to characterize Hoagland's "fluency."

3

and "responsive." When asked if Defendant delayed in responding, Anderson said "not that I recall."

### B. Personal History

Defendant Jose Contreras was born in June 1982, and is currently 30 years old. Defendant was born and raised in Sacatecas, Mexico. Defendant is the oldest of seven children. He attended elementary school in Mexico through the fifth grade, but the school in his town did not provide any further education. Defendant's attendance at school was poor, as he often had to work in the field to help support his family, and he did not do well in school.

At age 18, Defendant emigrated to the United States with his father. Apparently, his mother and siblings followed. Defendant has never been married, but he has an eight-year relationship with Rosa Femat, with whom he has two children. Defendant currently lives with his father, mother, three younger sisters, and his girlfriend and their two children. Since coming to the United States, Defendant has worked as a laborer in the construction industry, doing roofing and concrete finishing. Defendant has no prior criminal history.

### C. Evaluations

#### 1. Luis Rosell

Defendant was initially seen on April 4, 2012 by Luis Rosell, Psy.D., at the request of Defendant's counsel. Dr. Rosell, who is associated with LBR Psychological Consultants in Mount Pleasant, Iowa, met with Defendant at his attorney's office for "over four hours." During that time, Dr. Rosell administered certain psychological tests and completed an "Evaluation of Competency to Stand Trial – Revised." Dr. Rosell did not testify at the hearing, but his report, dated April 11, 2012, was introduced as Defendant's Exhibit B.

The evaluation was conducted in Spanish, without the need of an interpreter, given Dr. Rosell's fluency in the Spanish language. According to Dr. Rosell's report,

4

Defendant's speech was "clear and coherent" and there did not appear to be any problems communicating. Dr. Rosell noted "there were issues of concern regarding comprehension." As discussed below, however, it was "difficult to determine if [Defendant] was giving his best effort" on the Woodcock-Muñoz Bateria, the results of the TOMM indicated that Defendant was "exaggerating cognitive impairment," and the results of the M-FAST suggested Defendant "was possibly malingering psychiatric symptoms."

Defendant told Dr. Rosell that he "likes his attorney and he wants her to help him." According to Dr. Rosell, however, Defendant "wants her to help him on his terms." Defendant "made it clear" to Dr. Rosell that Defendant could not agree with his attorney "regarding what strategy should be used with regard to a plea agreement." The report further states:

> He expressed that he does not believe he is guilty because he did not know that the two individuals in his truck were illegal. He expressed that "why should those accusing me of knowing that they were illegal be believed and not me."

Forensic Psychological Evaluation by Luis Rosell, Psy.D. (Defendant's Exhibit B) at 4.

Defendant told Dr. Rosell that he could not make a plea agreement because "he does not know anything that could assist anyone." According to Dr. Rosell, Defendant "did not want to consider" answering questions by the Government regarding others.

In his report, Dr. Rosell states that Defendant "admitted auditory and visual hallucinations but was vague in describing their frequency or content."[4] It is not clear from the report, however, whether Defendant volunteered information about the alleged hallucinations, or whether he "admitted" the hallucinations after being questioned on the subject by Dr. Rosell.

Dr. Rosell concluded that Defendant "presents with a perplexing picture with regards to competency to stand trial." On one hand, Defendant does not appear to be "aware of the consequence of not deciding to go to court or making a plea bargain." He

---

[4] Forensic Psychologic Evaluation by Dr. Luis Rosell (Defendant's Exhibit B) at 2-3.

"continues to expound that he is innocent and therefore should not have to appear in court." On the other hand, Dr. Rosell speculates that Defendant "possibly fears the consequences of informing on others," and that "may be increasing his difficulty to cooperate and influencing his inconsistent presentation" in the testing and at the interview. Dr. Rosell concludes that "it is difficult for me to make a determination whether Mr. Contreras is competent to stand trial or make a decision regarding accepting a plea." Dr. Rosell opines, however, that his "behavior" is impeding his attorney's ability to serve his best interest.

### 2. David M. Szyhowski

Defendant was committed to MCC-Chicago for an in-custody evaluation lasting approximately 45 days. His evaluation was conducted by David M. Szyhowski, Psy.D. According to his curriculum vitae (Government's Exhibit 1), Dr. Szyhowski received a B.S. in psychology from Northwest Missouri State University in 2000, and earned a Psy.D. from the Adler School of Professional Psychology in July 2008. Between 2000 and 2008, Dr. Szyhowski was employed in various capacities. In August 2008, after receiving his Psy.D., Dr. Szyhowski obtained employment as a staff psychologist with the Federal Bureau of Prisons in Bryan, Texas. Since September 2010, Dr. Szyhowski has worked as a forensic psychologist with the Federal Bureau of Prisons in Chicago. Dr. Szyhowski estimated that he has conducted approximately 60 evaluations to determine competency to stand trial. Only three of those evaluations, however, involved non-English speaking defendants.

Dr. Szyhowski met with Defendant five times. The initial intake interview took approximately 25 minutes. Administration of the MMPI (discussed below) took approximately two hours, but Dr. Szyhowski did not have direct contact with Defendant during that time. The VIP test (discussed below) took 40 minutes. A clinical interview took approximately one hour, with an exit interview taking another hour. Dr. Szyhowski testified that he also observed Defendant as he "passed through" the housing unit where

6

Defendant was assigned. Because Dr. Szyhowski does not speak Spanish, his contacts with Defendant were conducted using a telephonic interpreter. According to Dr. Szyhowski, Defendant was "amicable and polite" throughout the process, although he demonstrated some anxiety. Dr. Szyhowski testified that anxiety is not unusual under these circumstances, particularly since Defendant has no prior criminal record.

According to Dr. Szyhowski, Defendant "displayed a basic factual understanding of the current legal proceedings." Defendant described the events surrounding his arrest and, while he was "unable to recall the specific guidelines for the time he could receive," he knew that two other "possible outcomes" included probation and possible deportation to Mexico.[5] Defendant was able to accurately describe the roles of the prosecutor, his attorney, and the judge. Defendant also "demonstrated an understanding of the role of the jury," although he was unable to recall additional information provided by his attorney in that regard.

According to Dr. Szyhowski, Defendant "also demonstrated a rational understanding of the current legal proceedings."[6] That is, Defendant's attorney explained the process of a plea bargain to him, and "he understood it to be when an individual exchanges a statement of guilt for a lesser penalty." When asked about the possible consequences,

> he was able to recall discussions with his attorney when she talked to him about the possibility of being deported to Mexico if he is found guilty. He stated he understood this could mean the loss of his Resident Alien status in the United States. He also recalled conversations where the option of probation had been discussed, but was unsure if this was still an option. While the defendant was unsure as to the exact number of months of incarceration he was facing if he were to be convicted, he understood his attorney was a reliable source of information for these matters.

---

[5] Forensic Report of Dr. David M. Szyhowski (Government's Exhibit 2) at 5.

[6] *Id.*

7

Forensic Report of Dr. David M. Szyhowski (Government's Exhibit 2) at 6.

Dr. Szyhowski concluded that while Defendant presents with an indication of cognitive deficits, "he does not appear to be suffering from any severe mental disease or defect that has significantly impacted his ability to understand the legal proceedings and to properly assist his counsel."[7]

### 3. *Kenya Randall Rocha*

Following his evaluation at MCC-Chicago, Defendant was evaluated at his attorney's request by Kenya Randall Rocha in Des Moines. Ms. Randall Rocha is a therapist, owner, and executive director of Mosaic Family Counseling Center, Inc. Ms. Randall Rocha received a B.S. in psychology and human services from Upper Iowa University in 2002, and an M.S. in education/community counseling from Drake University in May 2006. She speaks Spanish fluently and is "assimilated" in the Hispanic culture. Ms. Randall Rocha testified that she routinely evaluates persons on behalf of the Iowa Department of Human Services to determine if they are "competent" to raise their children. She admitted, however, that this is the first time she has evaluated a person's competency to stand trial in a criminal proceeding.

Ms. Randall Rocha saw Defendant 11 times between July 13, 2012 and September 10, 2012. The visits totaled 16 hours. That time included interviews by Ms. Randall Rocha, administration of the K-BIT on two occasions (discussed below), and a non-standardized comprehensive mental status examination by Dr. David Grove.

According to Ms. Randall Rocha, Defendant is extremely slow in responding to questions. Defendant would demonstrate a "hypnogogic state" – where he "spaces out" – which Ms. Randall Rocha believes may be petit mal seizures. Defendant also described visual and auditory hallucinations. When asked whether he suffered from olfactory hallucinations, Defendant agreed that he had those, too. Ms. Randall Rocha believes

---

[7] *Id.* at 8.

additional testing should be conducted to rule out a possible organic or neurological brain disorder. Defendant is also afraid of the dark and is afraid to be in his house alone.

When speaking to Ms. Randall Rocha, Defendant "did not remember what he was told in regards to what could happen" as a result of the charges, despite the fact that he had been told this many times by his attorney. Defendant was able to describe the events giving rise to the charges, understood that he had been charged with a crime, and understood the role of his attorney and the judge. Defendant told Ms. Randall Rocha that he did not understand the role of the prosecutor, however, and did not understand a plea agreement. Defendant knows that he can plead guilty, but doesn't want to enter such a plea because "it's not true."

In her report, Ms. Randall Rocha states Defendant's score on the K-BIT indicates Defendant "qualifies for a diagnosis of mental retardation."[8] However, the report states that the K-BIT test "did not reach the requisite baseline," and Ms. Randall Rocha clarified at the hearing that the test results were invalid. Ms. Randall Rocha also conceded at the hearing that Defendant's test results alone do not qualify for a diagnosis of mental retardation.

According to Ms. Randall Rocha, Defendant does not know how to "forethink," which is required to "make things up." Based on his low intellectual functioning and apparent cognitive deficits, Ms. Randall Rocha concluded that Defendant "does not have sufficient present ability to work with his attorney and therefore is unable to assist in his own defense or have an understanding of the court proceedings that would enable him to fully participate."

### D. Psychological Testing

During his examinations by Dr. Rosell, Dr. Szyhowski, and Ms. Randall Rocha, Defendant was given a battery of psychological tests.

---

[8] Forensic Evaluation of Kenya Randall Rocha (Defendant's Exhibit A) at 12.

- **Woodcock-Muñoz Bateria.** This test, which is administered in Spanish and includes seven subtests, is intended to provide a comprehensive measure of the subject's general intellectual ability. Dr. Rosell reported that Defendant "had significant difficulty on the majority of tasks presented."[9] The resulting scores were "in the kindergarten to second grade equivalent." Dr. Rosell noted, however, that Defendant's "overall effort was inconsistent and it was difficult to determine if he was giving his best effort and whether the testing reflects his overall ability."

- **Test of Memory Malingering (TOMM).** This test, which was administered by Dr. Rosell, is intended to assist psychologists "in discriminating between bona fide memory-impaired patients and malingerers."[10] Dr. Szyhowski described the test at the hearing. The subject is first shown 50 line drawings. The subject is then shown a card with two line drawings and is required to pick the drawing which he had seen previously. According to Dr. Szyhowski, an average score is 45 correct answers. A purely random selection of the correct drawing would generally result in about 25 correct answers. Defendant had 27 errors on the first trial and 41 errors on his second trial.[11] Dr. Szyhowski testified that the 41 errors on the second trial demonstrates Defendant remembered the drawing which he had seen previously and intentionally picked the wrong response. According to Dr. Rosell's report, "these results indicate that Mr. Contreras was exaggerating cognitive impairment at the present time."

- **Miller Functional Assessment of Symptoms Test (M-FAST).** This test, also administered by Dr. Rosell, "consists of a structured interview designed to provide information regarding the probability that an individual is malingering psychiatric

---

[9] Forensic Psychological Evaluation by Dr. Luis Rosell (Defendant's Exhibit B) at 3.

[10] *Id.*

[11] Both Dr. Rosell's report and Dr. Szyhowski's testimony indicated that the test is generally administered three times, but the report is silent regarding the results of the third trial, if it was given.

illness."[12] According to Dr. Szyhowski, a score higher than six indicates the subject "is potentially feigning mental illness." Here, Defendant's score was 11. According to Dr. Rosell, "[t]his is suggestive that he was possibly malingering psychiatric symptoms during my evaluation."

- **Test of Non-Verbal Intelligence-3 (TONI-3).** This test is designed to "quickly and accurately estimate an individual's intellectual functioning."[13] Defendant received a score of 62, with a confidence interval of 58-66, suggesting he is "in the Borderline range of intellectual functioning with regard to his non-verbal reasoning and problem solving abilities." Dr. Szyhowski also opines, however, that his VIP score (discussed below) indicates that "this may not be a valid assessment."

- **Validity Indicator Profile (VIP).** This test is intended to determine a subject's effort on testing. It consists of two scales, one verbal and one non-verbal, but due to Defendant's native language being Spanish, only the non-verbal portion of the assessment was administered to him.[14] Dr. Szyhowski, who administered the test, opined that Defendant "did not place sufficient effort on this portion of the test." "While the defendant's response to items on this assessment is consistent with individuals who have low intellectual abilities, the overall profile is more indicative of an individual who was not adequately engaged in the task."[15] At the time of hearing, Dr. Szyhowski testified that Defendant was not paying attention or randomly responding.

- **Minnesota Multiphasic Personality Inventory-2 (MMPI-2).** Defendant was given the Spanish version of the test, consisting of 567 true-false questions. Defendant responded to the items "in an inconsistent manner" and his profile "was highly

---

[12] Forensic Psychological Evaluation by Dr. Luis Rosell (Defendant's Exhibit B) at 3.

[13] Forensic Report of Dr. David M. Szyhowski (Government's Exhibit 2) at 3-4.

[14] *Id.* at 4.

[15] *Id.*

11

elevated across the majority of clinical scales."[16] Accordingly, Dr. Szyhowski stated in his report that "this assessment was not deemed to be an accurate description of the defendant's overall level of functioning and is not valid for further interpretation." At the time of hearing, Dr. Szyhowski acknowledged that the MMPI requires at least a sixth grade reading level, and it appears unlikely that Defendant reads at that level.

- **Kaufman Brief Intelligence Test (K-BIT).** Ms. Randal Rocha twice administered this intelligence test to Defendant. Defendant scored the same both times, but Ms. Randal Rocha acknowledged that the results were "probably not valid." Defendant scored a 40 on the test, "which is clearly not the case."

## IV. DISCUSSION

A defendant is not competent to stand trial if the court finds by a preponderance of the evidence that "the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d); *See also United States v. Ghane*, 593 F.3d 775, 779 (8th Cir. 2010). Accordingly, the test for competency has two prongs: "(1) whether 'the defendant has a rational as well as factual understanding of the proceedings against him,' and (2) whether the defendant 'is able to consult with his lawyer with a reasonable degree of rational understanding.'" *Id.* at 780 (quoting *United States v. Denton*, 434 F.3d 1104, 1112 (8th Cir. 2006)); *See also Dusky v. United States*, 362 U.S. 402 (1960).

Which party bears the burden of proof in this regard has not been firmly established. In *United States v. Whittington*, 586 F.3d 613 (8th Cir. 2009), the Court noted a circuit split on this issue. The Fourth and Tenth Circuits place the burden of proof on the defendant to prove incompetence, while the Third, Fifth, Seventh, and Ninth Circuits place the burden of proof on the Government to prove competence. *Id.* at 617. The Eleventh Circuit has taken the position that the burden falls on the party making the

---

[16] *Id.*

motion to determine competency, and the Second Circuit has declined to reach the issue, noting that "the allocation of the burden of proof to the defendant will affect competency determinations only in a narrow class of cases where the evidence is in equipoise." *Id.* at 618. While noting that "[t]he guidance of the Supreme Court, and the recent precedent of this circuit, support the government's position that the burden is on the defendant to prove incompetence by a preponderance of the evidence," the Court in *Whittington* concluded that it "need not address the burden of proof issue further because we conclude the district court's finding of competency in this case did not depend upon the allocation of the burden of proof." *Id.*

### A. Is Defendant Able to Understand the Nature and Consequences of the Proceedings Against Him?

First, the Court must determine if Defendant is able to understand the nature and consequences of the proceedings. This requires "a rational as well as factual understanding" of the proceedings. *Ghane*, 593 F.2d at 780. This prong of the competency test has two parts. That is, the defendant must have a factual understanding of the proceedings against him, and a rational understanding of the proceedings against him.

Defendant described the circumstances underlying his arrest to all three evaluators. Defendant reported he was stopped by the police for having a light out on his truck, and that it was discovered his passengers were not legally in the United States. Defendant understands the instant charges stem from the passengers' legal status. Defendant professed his innocence to Dr. Szyhowski and Ms. Randall Rocha, stating he did not know the two individuals in his truck were "illegal." According to Dr. Szyhowski, Defendant argued that "why should those accusing me of knowing that they were illegal be believed and not me." Defendant clearly has a factual understanding of the charges against him.

Defendant also has a rational understanding of the proceedings against him. A preponderance of the credible evidence established that Defendant understands the roles of the prosecutor, his attorney, the judge, and the jury. Defendant also understands he

may be sent to prison if convicted and, most importantly to him, may be removed from the country. Defendant understands he has been charged with harboring and transporting aliens, but he asserts he is not guilty because he did not *know* the persons were in the country illegally. A preponderance of the evidence established that Defendant is able "to understand the nature and consequences of the proceedings against him."

The Court has not disregarded Defendant's limited intellectual functioning. All three of the evaluators recognized that Defendant suffers from cognitive deficits. However, it is somewhat difficult to determine the extent of those deficits. The Woodcock-Muñoz Bateria showed scores in the kindergarten to second grade range, but Dr. Rosell noted "it was difficult to determine if he was giving his best effort and whether the testing reflects his overall ability." Similarly, the VIP administered by Dr. Szyhowski suggested Defendant may not be "adequately engaged in the task." Defendant's counsel suggests that Defendant was not malingering, but may have been "overwhelmed" by the tests, or simply "didn't understand." That does not explain the results of the TOMM, however, which according to Dr. Szyhowski demonstrated Defendant remembered the drawing which he had seen previously and intentionally picked the wrong response. Dr. Rosell's report agrees that "these results indicate that Mr. Contreras was exaggerating cognitive impairment." The M-FAST also reflected that Defendant was feigning psychiatric symptoms. The K-BIT administered by Ms. Randall Rocha also reflected Defendant made no real effort to provide valid responses. It should be recalled that Defendant has successfully maintained employment since emigrating to the United States, and apparently passed a test to obtain a driver's license.

The Court also believes that evidence regarding Defendant's alleged hallucinations is suspect. According to Dr. Rosell, Defendant "admitted" that he had auditory and visual hallucinations, "but was vague in describing their frequency or content." Dr. Szyhowski testified that Defendant never mentioned any hallucinations during his evaluation at MCC-Chicago, and no observations were made which were consistent with hallucinations.

Dr. Szyhowski specifically asked Defendant's sister if Defendant suffered from auditory or visual hallucinations, and she said he did not. When Ms. Randall Rocha asked Defendant about hallucinations, he apparently gave an example of hitting the brakes on his car when he thought he saw something outside. When Ms. Randall Rocha "asked further," Defendant reported that this happened frequently and he has had "visual and/or auditory" hallucinations since he was 15. When Ms. Randall Rocha then asked about olfactory hallucinations, Defendant said yes, he has those, too.

It is undisputed that Defendant has certain cognitive deficits and has a slow response time to questions. Defendant recalls the events leading to his arrest, however, and understands the charges against him. Defendant also has a rational understanding of the possible consequences to the charges, including imprisonment and/or removal from the United States. Defendant understands he could enter a plea of guilty pursuant to a plea agreement, but is unwilling to consider an agreement which requires him to provide testimony regarding others. The Court believes Defendant has a rational as well as a factual understanding of the proceedings against him.

### B. Is Defendant Able to Assist Properly in His Defense?

The second prong of the competency test requires a finding that Defendant is able to assist properly in his defense. Stated otherwise, he must be able to consult with his lawyer "with a reasonable degree of rational understanding." *Ghane*, 593 F.3d at 780.

When Defendant met with Dr. Rosell early in the proceedings, he said he wanted his attorney to help him, but "he wants her to help him on his terms." According to Dr. Rosell's report, Defendant "made it clear that he cannot agree with her regarding what strategy should be used with regard to a plea agreement."[17] Dr. Szyhowski asked Defendant how he might attempt to solve disagreements with his attorney. Defendant replied that "I would talk to her and tell her what I want." Dr. Szyhowski testified that this demonstrated an ability and willingness to "advocate for himself."

---

[17] Forensic Psychological Evaluation of Dr. Luis Rosell (Defendant's Exhibit B) at 4.

Dr. Rosell reported that Defendant repeatedly stated he did not want to consider a plea agreement which would require him to provide information regarding others. Defendant apparently fears being deported to Mexico, but is reluctant to enter a plea agreement which may avoid that result, if it involves providing testimony regarding other persons. This demonstrates Defendant is "able to consult with his lawyer with a reasonable degree of rational understanding" and, in fact, appears to be making decisions regarding his options.

While Defendant clearly has limited intellectual ability, I believe he is able to "assist properly in his defense." Defendant asserts he is factually innocent – *i.e.*, that he did not know the passengers in his truck were in the country illegally. Defendant expressed this view to the evaluators, and can presumably testify to that fact, if he chooses to do so. Understandably, Defendant is fearful that a conviction would cause his removal from the United States. Defendant is apparently unwilling to reach a plea agreement which may avoid that result, however, because he does not want to provide testimony regarding others. Simply having difficulty choosing between undesirable alternatives does not render a defendant unable to assist in his defense.

## C. Summary

In summary, I find by a preponderance of the evidence that Defendant is able to understand the nature and consequences of the proceeding against him and to assist properly in his defense. He has a rational as well as factual understanding of the proceedings. In addition, he is able to consult with his lawyer with a reasonable degree of rational understanding. Notwithstanding his limited intellectual functioning, Defendant is competent to stand trial.[18]

---

[18] The Court reaches this conclusion regardless of whether the burden of proof is on Defendant to prove incompetence, or on the Government to prove competence. Accordingly, like the Court in *Whittington*, I find it unnecessary to definitely allocate the burden of proof.

## V. ORDER

IT IS THEREFORE ORDERED that Defendant is hereby found **COMPETENT** to stand trial.

DATED this 4th day of October, 2012.

*[signature]*

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA